All right. Now, I think we're all together and ready to proceed. Great. Thank you, honors, and may it please the court. My name is Shiyang Huang. I'm here pro se today. And the question of here is whether name plaintiffs adequately alleged and shown Article III standing as under the shadow of Skokie. They did not. Similar to Moransky and Thao, they lack standing for three critical reasons. First, plaintiff waived the issue entirely by using one page of their 20,000 word brief in their passing reference, waived the issue. And that waiver similarly applies to Mr. Frank, who did not challenge that issue at all in his opening brief. Second, plaintiffs repeatedly refused to provide any evidence to establish their Article III standing, insisting that it is in pleading stage, despite that they have gone through a Rule 23 class certification and a final judgment on the merits before this court's review. Third, those with only a conclusory allegation for so-called imminent risk of future harm, lack standing. Not only does this court's Moransky-Ombak opinion and Thao reject their allegations of future injury, as well as so-called risk mitigation for standing, Flapper decided that speculation does not help Article III standing. And a cascade of speculation, like this case, does not help standing any further. For two specific reasons, this case should be dismissed first, as this court did in Trichel, 964 F.3rd and 990. This court dismissed the case swastikanti on a Article III analysis that the parties did not provide. More relevantly, this court's opinion of Moransky-Ombak arises from the same settlement stage when names went into the holdup. This is Beverly Martin. You know, I was involved in Moransky, as was Judge Grant. I mean, in Moransky, we're talking about, you know, maybe six digits and a credit card number. Here, we're talking about disclosure of all the digits of the Social Security number. So, isn't your reliance on Moransky a little bit of a problem for you? I think that wouldn't be an issue, because, number one, the name plaintiffs have repeatedly refused to provide any evidence. And as the Supreme Court has said in Walmart v. Duke and all these offsprings, Rule 23 is not a mere fleeting standard. And plaintiffs have insisted that they would like to have this case on the fleeting stage. They, for example, in their November 428 J letter, they said, plaintiffs have no need to provide any evidence. And that does not suffice for Rule 23, which requires some limited inquiry to the merits, even for class certification purposes. And the Supreme Court has certainly said it's not a free-ranging inquiry to the merits, but that doesn't mean there's no inquiry to the merits, especially when such an important jurisdictional issue is right here, when the parties both understand their Article III issue is in stock at once. I see that my time has run, but I'm happy to answer any other questions. If the gentleman will allow, I've got one question. Doesn't the complaint specifically allege that the customers have paid $1.4 billion in identity theft protection services? I agree that's something that they have pled, but that doesn't help the risk, to identify the risk. And I'm reading from this court's recent trial opinion, where 986, at 1343, it says, when the report do nothing to clarify the risk, the plaintiff, in this case, for their allegations of increased risk are insufficient to confer standing. And here, plaintiffs have, for somebody like myself, for example, I did not purchase any identity theft insurance, so that wouldn't apply to me. And worse, their allegation is just that, because the social security number, there's zero minute risk of future harm. And again, for me, I have credit fees, which would deny much of the risk for future risk of injury, but plaintiffs do not really help to clarify how much of reduced risk for somebody like myself. Thank you. I think we've got your answer. Thank you. Thank you. Mr. Isakson, are you next? Yes, Your Honor. May it please the Court, I'm Eric Alan Isakson, representing John W. Davis in this appeal. I think that Mr. Huang is correct that at the class certification, settlement approval, and entry of final judgment stage, more than pleadings are required. You need to have evidence to support a finding by a preponderance of the evidence that there is Article III standing. The Supreme Court in Lujan v. Defenders of Wildlife and Lewis v. Casey made clear that the elements of Article III standing are not mere pleading requirements. You can, at the pleading stage, have general allegations that support Article III standing, but as you move on through the proceeding of the case, you've got to start presenting evidence. And Rule 23 is a evidentiary requirement. In Walmart v. Dukes and in Comcast v. Barron, the Supreme Court held, Rule 23 does not set forth a mere pleading standard. You've got to present evidence. Now, I think I disagree with Mr. Huang about whether the pleadings are sufficient for there to be Article III standing in this case. I think that the pleadings adequately allege Article III standing in pleading that certain name plaintiffs have suffered identity theft, but they also have to show that that identity theft is fairly traceable to the Equifax breach. They can allege it, and I think they've adequately alleged it, but they haven't done the evidence. Also, they haven't shown evidence that there is a material risk to members of the class. They haven't quantified it. There may well be a material risk, but there's no evidentiary quantification of it. I also want to emphasize that the Article III jurisdictional defects in this case do not prevent the court from reaching certain collateral issues. I think one of the most important collateral issues in this case is the right of public access to judicial records, to materials that the judge considered were submitted by the parties and considered by the judge in reaching conclusions. The ex parte communications of what may well have been opinions that the judge adopted verbatim are things that need to be on the record and publicly accessible. There's a First Amendment right of public access to court records and materials considered by the judge. There's a common law right of public access, and it's particularly important in a class action like this that the public, that litigants, and that 147 million people who are going to be bound by the judgment in this case have access to those documents. It's also, I think, a collateral issue with respect to the violation of Canon 3A4 by Judge Fransch with respect to the ex parte communications. And Judge Fransch... Can you... I have just a procedural question about that. So a judge from this court already denied your motion to supplement the record with this original submission from the parties for the order. Isn't that the law of the case now? I mean, we can't re-decide that, can we? My recollection is that it was sent on to the merits panel to decide that. Mr. Fransch is going to focus his argument on these points. He can probably say better than I, but I believe that it has been basically carried with the case to the merits panel, and it's for the merits panel to decide. I know in many cases in other circuits where material has been sealed in the district court, as soon as it goes up on appeal is in order to show cause why it shouldn't be unsealed. Public access to court records is extraordinarily important. And in this case, the materials need to be made a part of the record and made available to the public, including the 147 million people who will be bound by the judgment if the settlement is approved. And your position on that, just so I'm understanding this, I mean, your position on that is not that the district court erred or abused its discretion in asking for a proposed order. It's that the district court should have put the proposed order on the docket somewhere so that people could look at what the parties had proposed at the district court sign. That is correct. It should have been shared with opposing counsel, and it should have been put on the docket. Absolutely. Now, I'd also like to address the issue of incentive awards. The incentive awards that Professor Klonoff said our argument below was frivolous. Well, a panel of this court, Ken Johnson versus NPS, adopted our position that incentive awards are illegal under Supreme Court precedent. What's the consequence of that? Well, incentive awards of thousands of dollars to plaintiffs give them the disincentive to adequately represent the class. I think it is necessary to hold that the class was not adequately represented in this case, but the 96 plaintiffs asked for a lot of money, but didn't put in any evidence to show what they did for it. So you don't agree with Equifax's argument that we could merely strip the incentive awards from the settlement and otherwise approve it? I do not agree with that. The Sixth Circuit has emphasized many times that incentive awards give class representatives a reason to settle a case without regard to benefits from the class because of the money that they will get in incentive awards, which in some courts has been deemed routine. If a class representative can get 2,500 bucks for ignoring their duty to represent the interests of the class, I think that's a serious conflict of interest. And I think that that is something that requires reversal with respect to the findings of adequacy representation. Let me ask, did Judge Harville want to ask an additional question? Please. So I had a question that was similar to what Judge Grant asked, which is on the ex parte communication issue. What remedy should we, let's assume I agree with you that that order should be on the docket. Why would that necessarily mean that the class settlement needed to be vacated instead of just requiring the order to be put on the docket? Well, I think it probably depends in part on whether they did indeed adopt it verbatim or whether Judge Grasch did indeed adopt it verbatim. The order, if it's a verbatim adoption, includes a lot of things that were not said by the judge as the basis for his decision at the fairness hearing. It was written by class counsel and includes perilous, scandalous charges of misconduct by objectors in it. And it's necessary, I think, to evaluate whether the judge actually exercised independent judgment on the record that we've currently got with the assumption that it's verbatim. We have to assume that the judge did not exercise independent judgment. If it goes on the docket and it turns out that the judge wrote a independent opinion, it is not verbatim adoption, that is truly the judge's ruling, then you've got a different result. But at this point, we've got to assume it's verbatim and that independent judgment is not exercised. Thank you, Mr. Osgutson. Thank you very much, Hannah. Mr. Frank. Thank you, Your Honor. May it please the court, Ted Frank, arguing for the Watkins and Westapotts. The settlement creates a single national class with uniform relief based solely on Georgia law, even though many class members from other states have unique causes of action with material differences in state law. Two or more sets of class members with material with different claims,  fighting over the allocation of a single settlement pot create a fundamental conflict requiring settlement to be made. The state has a separate representation. Defendants even admit that courts must create subclasses when a subgroup has unique claims whose merits quote, differed significantly. But here, the Georgia national class has a fatal flaw that state subclasses wouldn't have had because McConnell, Georgia Supreme Court decision affirming a 2016 decision, held that there's no legal duty to avoid a data breach disclosing social security numbers. Neither Rapelli mentions McConnell. So as in literary works, all class members here shared an interest in maximizing the collective recovery, but their interests diverged as to the fundamental, excuse me, as to the distribution of that recovery because each category of claim is a different strength and therefore commands a different settlement value. That's 654 after 254. We- Is your argument then that the district court was not incorrect that the Georgia plaintiffs would not have had a special state remedy, but that plaintiffs from other states still retained a special remedy, a statutory remedy, and so they should have had a separate subclass? That's our position, that you had these state remedies separate and apart from what was available under Georgia law, and that there should have been at least one subclass reflecting those state remedies. And there's an additional cause of action for state failure to notify a different state statutory remedy that isn't even in Georgia law. So you needed subclasses for these valuable claims that were not accounted for. My claims were valuable. Well, I, and this is, so I read the Utah and the DC statutes, and I believe the Utah statute specifically says that the claim that it provides is not classable. Where do I go to find an objector who is objecting from a state where that objector would have had a claim that could have been brought under state law that would have been a valuable claim? Well, first of all, we were objectors from Utah and DC, and Utah state law does not permit, state procedure does not permit class actions, but under Shady Grove, and under this court's decision in LISC, federal procedure that governs, and state law cannot control whether a case is a class action. So the district court committed legal error there, and the appellees repeat that legal error. But we raise that. These are statutory damages claims of $1,500 or $2,000, and they don't, aren't subject to the affirmative defense that's in Georgia state law. But I guess my point is, you would agree that Utah and DC are the two that we look at, because those are where the objectors are from. We don't do- Those are where the objectors are from. The Edelson-Amicus identifies that the statutory damages claims do have value. Returning to the issue of the ex parte communications, we do believe that that was reversible error for multiple reasons. And the court's August 26th order does not decide that question. It deferred it to this panel. So we're entitled to a decision on it. But this court in Johnson versus NPAS unanimously held that appellate courts must have a basis for judging the exercise of the trial court's discretion. And the district court issued a short conclusory oral ruling that impermissibly relied upon an inadmissible expert report, and then delegated the writing of the opinion to class counsel, who provided the draft opinion to the court ex parte without any opportunity for opposing parties to review or comment on the new findings, facts and law that had never been briefed and were absent from the court's oral opinion. The district court and the class counsel then refused to replace this on the appellate record to try to preclude this court from reviewing it. That sequence is extraordinary and unprecedented and reversible error for multiple independent reasons. It's a violation of canon 3A4, which appellees never mentioned under Edgar versus KL, that alone requires reversal and reassignment. Cases like Bright. So Mr. Bright, I mean, so I guess your argument is that the class members are parties, is that? Is that your argument? That's correct under Devlin versus Gardeletti. And that's your best case on that? Well, Edgar versus KL and Bright, Bright is our best case, because that's exactly these facts. And any other ruling would essentially nullify Johnson versus NPAS. Johnson says the court just can't issue a conclusory ruling. It has to give something for the court to decide on. So, you know, we tell district judges not to do this, and then, you know, we let them do it. It's basically my view of our president. So in Coney Square, we said, you know, because the judge reached the firm decision first, and that the other party had ample opportunity to present their arguments, then it was okay. And so why don't we have to follow Coney Square in this case? Coney Square was a bankruptcy judge. So the district court reviewed the Article I judge DeNovo, and then the 11th Circuit reviewed the district court opinion, which did exercise independent judgment. So that's not this case. Here, there's been no independent review. And aside from that, Coney Square was decided before Chudasama, which holds that this is grounds for reassignment, and was decided before Canon 3A4 was amended to make it explicitly clear that you can never do this. There's no evidence in the record that the 122-page opinion reflects the independent judgment this and other courts require in class actions, Bright, Community Bank, Johnson. The appeal bond order, which relies on the admittedly, of Watkins and Frank as serial objector extortionists, must be reversed. And at a minimum, Chudasama requires that to preserve the appearance of justice, this requires reassignment. Can I ask you a question about standing, which I don't think you raised in your brief, but you do this for a living. So I was gonna get your view on this. Am I right in looking at the standing issue more as a predominance commonality issue than a true standing issue in the sense that it may be that some of the members of the class have sort of different standing arguments than others. And that would, if I were to think that was a problem there, it would be a predominance commonality problem and not a true standing problem. That's not what was raised in TransUnion and in Olin. I can defer to that to plaintiffs. And I refer to yesterday's 28-J on that. Yeah, well, I mean, let's say that's true. Doesn't that suggest that there should have been an assessment of subclasses in the case, if there were plaintiffs in the class with varying degrees of standing and different standing arguments? That would be another grounds for subclassing. We're relying on the state law issue. Nobody raised the standing as an argument for subclassing or commonality or predominance. Okay, I'm into my rebuttal time and unless the court has further questions. Thank you. Sorry, I don't know who's next. Your Honor, I am. Okay, good morning. Good morning, Your Honor. Good morning. Ken Canfield for the plaintiffs. By any measure, the settlement here is historic, providing unprecedented monetary and injunctive relief that exceeds by orders of magnitude anything obtained in any other data breach case. The settlement supported by the FTC, the Consumer Financial Protection Bureau and the Attorneys General of 48 states, Puerto Rico and the District of Columbia. On appeal, the objectors raised issues that with one exception, challenged discretionary decisions by the trial judge or make legal arguments that have been repeatedly rejected in other cases. None of those objections provide any basis for reversal. The one exception is the service award issue, which is currently before this court for potential on-bank review in Johnson versus NPAS solutions. There's no need to await a final ruling in Johnson before affirming the service awards are severable under the settlement agreement. This court can remand with instructions that the service awards remain in the settlement fund and not be distributed to anybody pending this court's final decision. That way the settlement proceeds can be quickly distributed. Let me begin. What's your response to opposing counsel's argument that those awards gave the wrong incentive to the main plaintiff? The class had no assurance that they would get a service award. It was totally up to the court's discretion and the settlement agreement provided it. It wasn't, it being approved, wasn't dependent upon any service awards being made. The amounts are very modest. They're a lot less than courts have awarded in other cases. In Johnson, this court didn't reverse the service awards because of a public policy reason that people are getting swayed. It was because they were not permitted under some old Supreme Court decisions. It's also contrary to the record in this case. The court agreed, the class agreed to the merits of the settlement before the service awards were even negotiated. And perhaps most importantly, the district court found that the settlement benefits were fair, reasonable, and adequate. And the fairness of the settlement is supported by regulators. So there's no basis for this court to reverse this whole deal based on speculation that some class members sold their souls for $2,500. Now on the issue of standing, there is no question but that this court has jurisdiction. Article three only, and Equifax didn't even contest it. Article three only requires that one main plaintiff have standing to create jurisdiction. Dozens of main plaintiffs allege that their personal data has already been misused and they've suffered financial injury as a result. Courts uniformly hold, including this court in the Moransky on bank opinion and in Resnick that class members who have suffered financial injury from data breach cases have standing and that their standing is sufficient to comply to create jurisdiction. The standing issue that Mr. Wong raises is, as Judge Brasher said, really best analyzed as a predominance problem. And there isn't a predominance problem here. The plaintiffs allege, people were injured in different ways, but plaintiffs allege a common minimal injury, the same for every class member. That's an imminent and substantial risk of identity theft. Every class member also has a claim for nominal damages under Georgia law without any proof of actual loss. And the amount is not limited to a dollar, it's up to the jury. And Georgia courts have affirmed the words of as high as $20,000. So all I can quote about it, there's just no predominance issue. There can't be, because Mr. Wong isn't arguing that some people who allegedly weren't exposed are injured and some of the other exposure only plaintiffs are injured. His argument is that everybody wasn't injured. Even if you look at that issue from a standing analysis rather than rule 23, the result's the same. All the standing requirements are met. Plaintiffs allege a material risk of harm approximately caused by the Equifax data breach that satisfies the injury in fact and traceability requirements. And as the Supreme Court held last month in the Preczewski's case, a nominal damages claim satisfies the redressability requirement. Mr. Wong's real complaint is that he says the risk of harm from a data breach is speculative. That's not an open question in this circuit. This court held in Moransky, quote, this opinion makes clear that anyone who properly pleads a material risk of identity theft would have standing. The question is whether in this case under its facts, which Mr. Wong ignores, plaintiffs have alleged facts that are sufficient to create a material risk of harm. The complaint does that. It says that Equifax plays a central role in the consumer economy, that it maintains what experts call the crown jewels of personal financial system. The hackers specifically targeted that information. They took it from Equifax's data breach. The complaint cites one expert in consumer finance who said right after the breach, that quote, on a scale of one to 10 in terms of risk to consumers, this is a 10. Because of the extent of the risk, the FTC took the unusual step of opening an investigation into the breach. Lots of other regulators did the same. Government officials and the media emphasized the magnitude of the risk. Equifax itself agreed and told consumers to protect themselves by placing fraud alerts on their credit files and freezing their credit and doing other things. And given the magnitude of the risk, plaintiffs have alleged, not surprisingly, that class members have actually had their stolen data used to create identity theft and fraud. And this court in South. What do you say about Mr. Hong's argument that there was no evidence presented, that these are allegations and that there should be some obligation to present evidence at the Rule 23 certification stage that would support some of these allegations? What do you say about that? It's not necessary. No court has imposed such a requirement. The rule is that plaintiffs only need to come forward with a brief proof required at a particular stage. And we haven't gotten to the stage where there's any proof required. That the district court certified a class doesn't change that statement. This court has repeatedly said, most recently in Cordova, that allegations of standing in the complaint are sufficient for purposes of certification. No more could be required because Rule 23 doesn't authorize wide ranging merits investigations or require that a plaintiff prove its claims before class can be certified. The only thing that is required is that the merits be looked at if necessary to show that the requirements of Rule 23 have been met. And they have been, because you can do that based on the allegations. The fact that there's a final judgment in this case doesn't change the resolve at all. Courts enter final judgments all the time without a factual inquiry into whether all the plaintiff's claims of injury are actually true. And class actions settle all the time without proof. The objectors don't explain why logically you need more than allegations at this point. If my fellow panelists don't mind, I've got a question on a different topic, which is why in the world shouldn't the draft order have been published on the district court docket? Let me put that whole issue into context. The entire dispute about the proposed order arose only because Mr. Frank got upset that Judge Thrash found he was a serial objector. And he threatened to delay resolution of the appeal so he could move for summary reversal and seek to have Judge Thrash removed from the case. He didn't object when the judge asked us to prepare a proposed order. And when after the proposed order was entered, he moved to put the proposed order on the record, his motion wasn't even controversial. We consented to it. But before Judge Thrash ruled on that motion, Mr. Frank told us what his motivation was and that he wanted to move for summary reversal and seek Judge Thrash's removal. And that would have inevitably disrupted the appeal and delayed distribution of the settlement benefits to the class. So that's why we object. They claim that delay and disruption was not their intent. But the plaintiffs offered last June to stipulate putting the proposed order on the record. If the objectors would agree to withhold their arguments on this point to be considered with the merits briefing so it didn't delay the appeal. They refused to agree. If they had agreed, the proposed order would have been placed on the record long ago. And we don't have any problem with putting the proposed order if the court wants it on the record now. The problem was it was going to be used by the serial objectors to disrupt and delay this appeal. I'm sure that orders are often used by opposing parties for purposes that the other party disagrees with. Is that the rule that if an order would cause a party to object, the court doesn't need to enter it onto the record? I don't think that there is a rule on that. There's a local rule that says that the default rule is that unless the judge rules otherwise, the prevailing party is supposed to prepare the order after the judge has ruled orally from the bench. And the practice is to send that order by word to the judge so that the judge can make whatever changes are necessary. Is it typical for that order, not the draft order not to appear on the docket or does the draft order typically appear on the docket? It does not appear on the docket. I can say that in my practice in the Northern District, I don't think I've ever put a proposed order on the docket. Yeah, but so, I mean, I was a district court judge and I got those proposed orders, but the other side was always copied on the proposed order. I guess that's what's kind of confusing here is that not only do we not know what the proposal was, but it seems like the objectors are saying they didn't know what the proposal was. And so they didn't have the option, for example, of filing it with a motion to reconsider or filing the proposed order and saying the judge messed up because he didn't reflect any independent judgment or something like that. Was the proposed order sent to anybody or was it just sent to the judge? It was sent to Equifax. It was negotiated by the parties and consisted with the practice in this district that we sent to the court by word, in a word form. But you sent the, or maybe not you, but someone on the plaintiff's side sent it to the judge and Equifax had notice of that, but the objectors didn't. Yes, and Equifax was involved in drafting the order. It's also important to put this issue in the context because the objectors don't complain about anything in the written order being materially different from anything Judge Thrash said in his lengthy oral ruling about the merits of the settlement. They only complain about his findings regarding that. And it was totally appropriate for the court to make those findings. The Manual for Complex Litigation emphasizes the importance of it. We submitted evidence of our allegations by sworn declaration. Only one of the objectors objected to any of that evidence at or before the hearing. Mr. Frank did not. No one asked for an opportunity to brief the issues. So the evidence regarding them, with one exception, was undisputed. And it's also important to point out this issue doesn't affect the class. It's personal to Mr. Frank. The only issue that Mr. Frank has raised relating to the interclass conflict, there's no question about what the judge's position was on that in his oral ruling. He said it was totally without merit. Under this court's jurisprudence, even if the order was adopted verbatim, and for that reason, they don't, objectors don't need the order to make the arguments they're making. They assume it was adopted verbatim. But it doesn't matter, because even if it was adopted verbatim under this court's jurisdiction, it should be affirmed. The case law says you can only reverse a ghostwritten order in that way if the process was both unfair and the order is unsupported by the record. And neither factors met here. The process was fundamentally fair. They had full opportunity to make all their arguments. And the court ruled after a four-hour oral hearing and no one objected. Their complaints of unfairness are untethered to the record and largely involved matters that were never raised at the time or run-of-the-mill procedural rulings to which they never objected. Further, the findings about the serial objectors are supported by the record, and those findings are not clearly erroneous. Can I ask you, if I just don't want to lose the opportunity for you to address Mr. Frank's argument about subclassing? Sure. And I just, so, I think the only objections before us on that are about Utah and D.C., because those are the only objectors we have. Raising that argument. Mr. Frank says that Utah's no-class element of its statute is just, you know, it's ineffective, doesn't matter. Why shouldn't subclassing have been something that at least a district court considered in a more thorough way here, given what's going on? I'll defer that specific question about the Utah statute to Mr. Balzer. But let me address generally the conflict issue. This court has said that fundamental, that subclasses are only necessary if there's a fundamental conflict. There isn't. All class members had their data compromised. They all share the same claim for money damages, and they all want to maximize the recovery. All are benefited by the settlement, none are harmed. Mr. Frank's claim that the statutory benefits are incredibly valuable, more valuable than anything else in the case, is not based on anything other than his own say-so. Judge Thrash rejected his argument. The attorney generals from the states with statutes on which Mr. Frank relies don't agree with him. The AGs in those states, many of whom have enforcement powers under those same statutes, didn't think their citizens were being shorted when they had the opportunity to review and recommend changes to the settlement after we negotiated it. To the contrary, the attorney generals decided to incorporate the settlement terms in their own consent orders. His argument has been rejected by the only two data breach cases that have considered it, Target and Anthem. Last counsel, who've collectively handled over 50 data breach cases and all the major ones, disagree with Mr. Frank. And the class representatives from each state that has a statutory damage claim don't believe that they're entitled to anything more. The only person that, there are only two people on the record that agree with it. One is the brother of the lawyer who represented Mr. Frank below, and the other is one of Mr. Frank's friends who filed an amicus brief without disclosing that he represented a party in this case that had its own statutory damage claims, and he later settled those claims for a pittance, relative pittance. I'd also ask if the statutory damage claims are so different and so valuable as he asserts, surely he ought to have some real world evidence that his theory is correct, but he doesn't. He hasn't cited a single data breach case in which anyone has ever recovered a dime in statutory damages under any of the statutes he cites. And he hasn't cited a single case involving a data breach or any other set of facts that has found the conflict requiring subclasses because some, but not all class members assert claims for statutory damages. And the fallacy of his claim is evident by comparing plaintiff's common law and statutory claims. His briefs point to two ways in which he says that those claims are better. That one is you have a claim for actual damages of up to $2,000 or so without proofing that anyone actually suffered loss. But Georgia law allows nominal damages up to the jury as much as $20,000. So those claims have no additional dollar value. And contrary to Mr. Frank's claim, our common law claims aren't fatally flawed because Georgia doesn't recognize that Equifax had common law duty. That's not what McConnell said, but even setting aside the negligence claim, he ignores that we filed a negligence per se claim, which involves a statutory duty under section five of the FTC Act. And that's the same statutory duty that most of these state statutes are founded on. So they're not any better. The only other point I'd make is on the ex parte order issue, they talk about the canons of judicial ethics. This court has considered the canons and cited them in its previous cases in which it has refused to reverse those written orders, including in Ray Colony Square. He says that the statute or the canon was amended. It wasn't amended in any way that's material to these proceedings. And the canon also has a specific exception for ex parte communications that are authorized by law. And here there was a local rule that authorized this statute. In any event, Judge Thrash was appointed by the Judicial Panel on Multidistrict Litigation to handle this case because of his experience. He's handled many MDLs before. He was intricately involved in every step of this litigation. Hearings constantly, massive amount of briefing. He read all kinds of things. He got hundreds of pages of briefing before the final approval order. He read all of that. We had a four hour hearing. And at the end of the hearing, he set the entire judgment out orally in court on the record and none of these people say that anything that he said is inconsistent with what's in the final orders. So we'd ask that with regard to the service issue, that that be ultimately left to the Johnson case and otherwise the court should affirm what happened below. Thank you. Thank you, Mr. Canfield. Mr. Balser. Okay, please, the court. David Balser on behalf of Equifax. Your honors, in light of sifting through massive briefing in this case, the 28 J letters that have been back and furious in listening to arguments this morning from my colleagues and the questions were discussed. I believe that there is a clear path to approval of the settlement here. And I'd like to focus on three things. I want to focus on the historic nature of the settlement. I want to address Mr. Frank's arguments directly, his two main issues, and then just briefly touch on some of the other points that have been raised that I don't think merit the attention. I want to underscore Mr. Canfield's settlement. It is in fact, more significant relief was provided in this settlement than any other data breach settlement in history. It has obtained the support of expert federal and state officials at all levels of government. And against that backdrop, there are very, very small number of objectors. There are 147 and a half million people in the class, fewer than 300 objectors, and the only objectors who are left for all professional objectors. The arguments that are raised by the objectors here are either practically mistaken or predicated on extending the law in ways that courts have repeatedly rejected. Against this landscape, the court should proceed cautiously and it should not disrupt all of the work that was done to achieve this historical settlement by authorities, district court, state attorneys general, the FTC, and by the CFPB, unless the court is convinced that the objectors have satisfied their burden of showing that the district court used its discretion as showing that the objectors cannot make here. I want to turn to Mr. Frank's primary two objections here. I want to start with subclassing. Subclassing is required only when there is a real conflict, a substantial interclass conflict. Mr. Frank argues that the statutory claims are different in kind, but his distinction is one without difference. Mr. Frank and other objectors have been tilting the same theoretical subclassing windmill for years, including in other data regions, and these arguments have been considered and rejected by both the target court and the anthem court, both courts finding that state statutory claims do not provide the basis for conflict that requires subclassing. And like target and anthem, there is no real conflict here that would require subclassing. The argument on subclassing proceeds from false premise, and here's the false premise. What he argues is, what Mr. Frank argues is, that because some of these state statutory claims survive the motion to dismiss, that they are uniquely valuable, and more so than the negligent to negligent state claims that also provide the motion to dismiss. As this court well knows, the standard on a motion to dismiss is one where the allegations and the complaint need to be taken as true. Had we gotten to the merit on these state statutory claims, there were significant and fatal problems with many of the state statutory claims. I'll highlight a few of them, and I will- I've got a question before you get there. What is our standard of review of that determination? Is that a determination that we review as an abuse of discretion, or does that have some kind of legal determination embedded in it that we have to look at a different way? I believe it's an abuse of discretion standard. The court has wide discretion to approve the settlement and all aspects of it to check through the elements of Rule 23 to determine, in this case, whether the 23A4 adequacy element was met. He did that, and I believe the review of that adequacy finding is an abuse of discretion review standard. And so there's serious problems with these statutory claims. 16 of them, including Utah's statute, require proof of a consumer transaction. There is no way a plaintiff here could prove that a consumer transaction was involved because Equifax was not in privity with the consumer. Equifax did not get the consumer's data from the consumer. They got it from third parties. So that's one fatal flaw that many of the consumer statutes have, including Utah. Mr. Frank argues for the first time in his reply brief here that there ought to be a subclass of issues relating to misrepresentation and omission, but all the misrep and omission claims under these statutes require the plaintiffs to have done something in response to a misstatement or omission. And again, they did not part with their personal identifying information directly to Equifax, so that they never would be able to prove on the merits of these claims. 30 of the statutes require proof of actual damages, which places those statutes on the same footing as the negligence claim that Mr. Frank derives. On the D.C. statute, the relevant statutory provision allowing damages wasn't enacted until 2020, which is after the data. So all the, and I could go on and on, but here's the point. The point is that there was significant risk at the summary judgment stage as to all of these claims. We did not place any value on the state statutory claims. Experienced class counsel didn't place any value on these claims. And most importantly, Judge Thrash, after reviewing the record, also found that these claims were not of sufficient value to create a substantial inter-class conflict that required a subclass. And the objectors can't come close to showing that Judge Thrash refused to express in reaching that determination. I wanna talk for a minute about the ex parte order. And I know that this is an issue that is on the panel's mind. And Judge Martin, you're right, that the court has said repeatedly, you shouldn't do this. And repeatedly, the court looks at the order itself and applies the appropriate review standard and makes a determination, just like happened in Colony Square. And in footnote 13 of the Colony Square opinion, this court did cite the judicial canons and affirmed the decision anyway. So- Please don't ask me to do this. You know, when they ask, you have to do it, I guess. Well, I mean, that's the other point, right? I mean, we do follow the instructions of our federal district judges. We were instructed to do this. And there's nothing improper on the rules for doing that. I understand the point that they would like to have seen the order, but here's the problem. The objectors have not connected the ex parte nature of the order to any substantive unfairness. No matter who penned the first draft, this is Judge Thrash's order. He signed it. And the objectors are not able to argue that the district court would have reached a different result, nor have they explained why remanding on this basis makes any sense at all. And I just want to say very briefly, if the court decides to remand for any reason, this case should not be reassigned. The plaintiffs, I mean, the objectors rely on Chudasama. That case is materially different than this case. That was a case where the court completely delegated all discovery rulings to the plaintiff's lawyers with predictable results. That is not what happened in this case. So for all these reasons, we joined the plaintiffs in asking the court to approve this historic settlement. Mr. Balzer, I didn't want to take up your time, but so I've been sitting in a judge's chambers for the last 21 years, and I'm always curious about what really goes on out there in the world. I mean, you know, generally, not speaking as to these objectors, I mean, how does that work? I mean, do the objectors come to you and say, we'll go away if you pay us X amount of dollars, or how does that work? You know, that's harder for them to do now with the amendments and the rules. That certainly was a practice that was engaged in, that led to some of the commentary and the amendments to the rules. And there are, and look, just to be candid here, there are some of the folks on this Zoom call have been found to have engaged in extortionate efforts to get a settlement approved by withdrawing their objections. I'm not putting Mr. Frank in that boat, okay? Just to be clear. He may be a serial objector, but he's not an extortionist. I'm not saying that he is, but there are others who the courts have found engage in an inappropriate purpose for their objections. And so I think the court does need to look through a jaundiced eye at what's really going on in the merits of these objections that have been raised. Thank you. Thank you, Your Honor. There is no date of breach exception to Article III. If plaintiffs lack standing, it will be a serious separation of powers violation to invade the province of legislative branch by issuing a improper advisory opinion. And there is a serious question- Do you disagree with the rule that, with the contention that one plaintiff demonstrating standing is enough for the class? I agree. That's what the Supreme Court has decided in Rumsfeld v. FAIR. One plaintiff is enough. And here we have a serious problem here where that plaintiff only pleads they have standing. Pleads conclusively and refuse, again, refuses to provide any evidence despite the fact they passed through motion to dismiss far beyond that. They've gone through a class certification, a final judgment on the merits, and now they still say, we'll provide evidence when you ask for it. And that should not be the standard for a court to approve a settlement with doubtful hypothetical jurisdiction and then on appeal, let's provide the evidence if somebody asks for it. I think it's a plaintiff's affirmative burden to demonstrate it's article three standing. And to that point, I agree very much with Judge Brasher about the fact that this was originally a problem where the fringes of the class is too big, where the people who suffered some injury, if they proved it, would have a class and settle the case as they want without setting aside separate, the justiciability problem. But the fact that many plaintiffs have refused to provide any evidence starts to endanger the entire class action itself by saying that if we don't provide any evidence, we can still settle the case. And by evading this court's decision in Tuchel, which dismissed the case for lack of jurisdiction, and in Maransky, from the same stage, that problem comes back again, which is the fact that they don't have any article three standing to prosecute the lawsuit, nonetheless, to go into the merits for this court. As the Supreme Court has said, and Steel Company in Arizona for official English, and this court's decision in Maransky, if the district court lacks jurisdiction, the only thing this court can do is to dismiss the case to correct the error for the lower court to entertain it. And I'll come back again to the question of predominance. It is very clear that many plaintiffs do not suffer, quote, the same injury and same interest as Walmart Institute's work, Amchem versus Windsor, have described the classes that are improper class certifications. And I'm reading also a quote here from Amchem, which says that the fact that a settlement is fair, reasonable, adequate, does not mean the class certification is proper. And here, I'm certainly challenging class certification for the fact that it does not allow the plaintiff to have enough articles in standing to survive in class certification. Added as an adversarial, the class would not have even been in place. I see my time is up. I'm happy to answer any other questions. Thank you. Thank you. This is Eric Isaacson again for Mr. Davis. I have to object to David Balzer's attack on my personal character and my client's personal character. His conduct in doing that is just outrageous. The findings that Mr. Davis is supposedly a serial objector who extracts payments for himself is based on a quotation from a report and recommendation by Magistrate Judge Lorana Snow in the Baranski versus Godivich-Hartman-Steer case. That was rejected by the district judge in that case that meaningful objections were filed and that he was gonna consider them on their merits. There's no evidence- Mr. Isaacson, you should be mad at me and not Mr. Balzer. I was the one that brought it up. No, no. I'm just- He, he, he- We've reached the- He's my character, Your Honor. Well- I'm very angry about that. And he did it on the basis of a report and recommendation. It was adopted or it was cited in the order in this case. It was not adopted by the district judge even though Godivich- Did he say your name? I didn't hear him say your name. There's people on this call other than Mr. Frank. He was clearly referring to me and Mr. Davis. That is, that is an ad hominem attack and it is outrageous. We had meritorious objections in Maranski. You sat on the three-judge panel that said we were right about Rule 23H and you held it was a harmless error because the judge took corrective steps because of our objection. We had a meritorious objection in that case with respect to incentive awards as well as shown by Johnson versus Enpass. And when it went up to the Enbank panel, I went out and I got Hogan's Lovell and Neil Katyal, a former acting Solicitor General of the United States, and had Mitch Reich argue that case because I figured the plaintiff's lawyers wouldn't dare slime Neil Katyal the way they tried to slime me. I'm very angry. I think that this is outrageous. And with respect to the citation of Resnick, I want to point out footnote one of Resnick says that it does not address issues of future injury. So it doesn't support their position that future injury support, that they've demonstrated future injury standing in this case. And the holding of Xiao is very clear. Evidence of a mere data breach does not, standing alone, satisfy the requirements of Article III standard. I think that it's very important that evidence be put in the record to support the finding that name plaintiffs have standing. It's true one name plaintiff may be enough, but the name plaintiffs in this case, they've argued concrete injuries that at the pleading stage, they say are fairly traceable to the Equifax data breach, but they have no evidence in the record either to show that they were in fact traceable to the Equifax data breach. And there's no record evidence to the record to quantify the level of risk to show that it's a material risk of future injury that they want to. Would you mind if I ask a question, Judge Martin? No, please. This is interesting to me, this idea of putting on evidence in support of the standing analysis. When in the process of the class action would a plaintiff do that? Would that be at the time of a motion for certification of the class? Is that what you're suggesting? That at that point, the plaintiff would have to say, here's our evidence that we have actual standing to get a class certified? Yes, Your Honor. And I think that's what this court held in Prado-Steinman, actual Prado-Steinman versus Bush. It held that plaintiffs have to provide actual proffers to affidavits and other evidentiary documents. Evidence is required. That's what this court has held in Prado-Steinman. And with respect to a settlement only class, where the hearing on class certification and settlement approval, there's gotta be a court hearing. The rule 23 says the court has to have a hearing on settlement approval. That would be a time that you could actually call the named plaintiffs to testify and be cross-examined. But definitely there must be evidence in order to certify a class. It's critical to adequacy of representation that the named plaintiffs have Article III standing and the Supreme Court's opinions with respect to Rule 23 say, Rule 23 requirements are not just pleading requirements. Lujan and Lewis versus Casey made very clear that standing has to be proved with evidence. You can't just rely on the complaint allegations. I see my time is run, Your Honors. Thank you. Mr. Frank. Thank you, Your Honor. This is de novo review because the District Court applied the wrong legal standard and that sort of error of law is reviewed by the court de novo and was reversible error. The court repeatedly made mistakes about how to apply 23-A4. He got Valley Drug wrong, misrepresenting, misstating its holding. It held that a 23-B3 opt-out right obviated any concerns about 23-A4 conflicts. That's error as a matter of law. We document many, many, many other legal errors that the District Court committed. Regrettably, my friends here get the law wrong and the facts wrong in many areas. The AGs have never said anything about my argument. In contrast, we have the world's leading privacy lawyer submitting amicus saying that the statutory damages claims have value. We have Equifax filing in the District Court docket 1168 saying, please throw out these individual Mississippi claims that achieve statutory damages against us. So these do have value, especially because the Georgia, the fatal flaws in the Georgia cases that bind the whole class here that the District Court was relying upon in error and that plaintiffs rely upon in error throughout their brief. I derive the Georgia negligence claim not because, oh, it's nominal damages, but because the Georgia Supreme Court in O'Connell says there's no cause of action. And where the underlying theories of recovery are different because of different affirmative defenses as in Ortiz or differing rights to statutory damages as in literary works, or different types of relief as in this court's decision in 3M, or materially different strengths in state law or federal claims as in Sprint, as in Central States, as in Dewey, and as in this court's decision in Lyons, you cannot certify the class without separate representation because of the conflicting interests in allocation of a single settlement fund. The cases that the appellees cite to the contrary are cases where there was separate representation, where there were the structural protections that we say should have happened here and were not here. They misrepresent the law of the circuit because no court has authorized ghostwriting an opinion without opposing parties having an opportunity to respond to the proposed order. And in Johnson v. NPAS, this court said, just because everybody's doing it, more is needed in the class process. That was on the service pay issue, right? No, no, the court was talking about the district court's rubber stamping. And it acknowledged that lots of district courts rubber stamped, but without putting any blame on the district court. And if the district court is just doing something it always does, even though it's against the rules, it's still a problem and we shouldn't be bound by the fact that everybody's been doing it wrong when it's due process simply demands that we have a right to respond when you submit something to the judge. And we know it's materially different because the district court's oral opinion was 10 pages and conclusory. And if that was what was submitted as the proposed order, we'd have reversible error because among other things, and we identify this in our brief. It's not just, oh, the district court said mean things about me, but it never said in the oral opinion, though that's true too. The district court in the oral opinion explicitly relied upon the Klonoff opinion, which was inadmissible because you can't have an expert saying, oh, here is what the law is judge. That's just basic black letter law about 702. And that applies to a fairness hearing under federal rule of evidence 1101. That would have been reversible error, except that in the ghost written opinion, apparently class counsel ironically included a phrase, I have exercised my independent judgment and we reviewed everything that Klonoff told me that I relied upon verbatim in the oral opinion. We're obviously prejudiced by that. That was the basis for the judges 23, one of the three bases for the judges 23A4 ruling. Let me ask you this. So I think, I mean, I do think this is, it's concerning to me that it was not noticed. There was not, this order was not provided to all parties in the case and I would include the objectors as parties. But shouldn't I write, shouldn't the analysis be just to assume that the order, that proposed order was that the district were just adopted verbatim, didn't make any changes to it and then evaluate whether that's a problem when we're analyzing whether to reverse the settlement on this basis? I think that's correct and that's what we argued for. And that does require reversal under Bright versus Westmoreland. And I think it also requires reversal under Johnson versus NPAS because otherwise it makes a nullity of Johnson's rule that you can't just have a judge issue a conclusory opinion because under plaintiff's proposed rule, all the Johnson court had to do was say, I hereby rule in the plaintiff's favor. Plaintiffs, please tell me why I should do that and I'll sign it. That can't be the rule. It can't be the rule in a class action affecting millions of absent class members. But I think Bright makes a critical distinction between findings of fact that opposing parties have an opportunity to respond to and an opinion which reflects the judge's reasoning or is supposed to reflect the judge's reasoning. We would have been happy to some sort of stipulation for plaintiffs to just put it in, but a pro se appellant who wasn't here was the one who blew that up. I shouldn't be punished by that. Well, I guess my point is, it seems like it doesn't matter whether it's in or not because we're just gonna assume that it was a verbatim adoption of the plaintiff's proposal. So although it might be a problem that you weren't provided an advance copy of it, it's not a, you know, for all we, I mean, it might actually have not been a proposed. I mean, it might not have been a verbatim adoption of the proposed order for all we know, but we're gonna just assume that it is because you weren't provided a copy of it. We agree. You should assume that and that's reversible error under Bright and Johnson, but there's still the due process violation that we weren't given the opportunity to respond to new arguments, new facts, new legal findings that were never raised until the reply in the fairness hearing. And then at the transcript of page 113, Mr. Frohloff gets up and says, I wanna respond to this rebuttal and the judge sits him down. The court defined serial objectors as extortionists. That's record 1094 and seven. So did class counsel record 902 and 40. Now that they're saying there's a difference between serial objectors and extortionists, they're just trying to cover for the court's legal error. I'm happy to answer any other questions here, but I encourage you to read our reply briefer. We refute many of these just actual misrepresentations of the record. Thank you, Mr. Frank. Thank you. Appreciate it. All right, I think that concludes our argument for this case and for the day. So to my two colleagues, you wanna reconvene at quarter till noon? Does that work for y'all? Yes. That's good. All right, court is in recess until tomorrow morning at nine o'clock.